```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-31-09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

SARA WOODHOUSE,                         :

            Plaintiff,          :      07 Civ. 7193 (GBD)(HBP)

    -against-                    :      REPORT AND
                                        RECOMMENDATION
MICHAEL J ASTRUE,                       :
COMMISSIONER OF SOCIAL SECURITY,

                                :
            Defendant.

                                :

-----------------------------------X

        PITMAN, United States Magistrate Judge:

        TO THE HONORABLE GEORGE B. DANIELS, United States
District Judge,


I.  Introduction

        Plaintiff, Sara Woodhouse, brings this action pursuant
to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g),
seeking judicial review of a final decision of the Commissioner
of Social Security (the "Commissioner") denying her application
for disability insurance benefits.  The Commissioner moves to
remand this action in order to further develop the administrative
record.  For the reasons set forth below, I respectfully recom-
mend that the Commissioner's motion be granted.

II.  Facts

On February 7, 1986, plaintiff was born with Sturge-Weber[1] and Klippel-Trenaunay-Weber[2] syndromes (Tr.[3] 199-202).  As a child, plaintiff underwent approximately seven facial surgeries to address capillary vascular malformations and hemangiomas (Tr.

---

[1]"Sturge-Weber syndrome is a neurological disorder indicated at birth by seizures and accompanied by a large port-wine stain birthmark on the forehead and upper eyelid of one side of the face.  The birthmark . . . is caused by an overabundance of capillaries around the trigeminal nerve just beneath the surface of the face.  Sturge-Weber syndrome is also accompanied by the loss of nerve cells and calcification of tissue in the cerebral cortex of the brain on the same side of the body as the birthmark.  Neurological symptoms include seizures that begin in infancy and may worsen with age.  Convulsions usually happen on the side of the body opposite the birthmark and vary in severity. There may be muscle weakness on the same side.  Some children will have developmental delays and mental retardation; most will have glaucoma (increased pressure within the eye) at birth or developing later.  The increased pressure within the eye can cause the eyeball to enlarge and bulge out of its socket (buphthalmos).  Sturge-Weber syndrome rarely affects other body organs."  (Memorandum of Law in Support of Defendant's Motion for Remand ("Def. Mem."), dated April 1, 2008, at 2 n.3; quoting National Institute of Neurological Disorders and Strokes available at http://www.ninds.nih.gov/disorders/sturge_weber/sturge_weber.htm (last visited March 27, 2009)).

[2]"Klippel-Trenaunay syndrome is a group of findings consisting of: (1) Multiple port wine stains or other blood vessel malformations, including dark spots of skin, (2) Excessive growth of bones and soft tissue . . . most commonly in the legs, but may affect the arms, the face, head, or internal organs (3) Varicose veins and (4) Bleeding from the rectum and blood in the urine may also occur."  (Def. Mem. at 2 n.3).

[3]"Tr." refers to the certified transcript of the administrative record that the Commissioner filed as part of his answer in this case, as required by 42 U.S.C. § 405(g).

2

113, 221, 228). Plaintiff experienced swelling and uneven growth in her legs resulting in scoliosis and a 2.5cm difference between the length of her right and left legs (Tr. 304, 353). Plaintiff was given a 1.5cm lift both inside and outside of her shoe to help prevent her supple lumbar scoliosis from progressing (Tr. 304, 353). Initially, there were no ophthalmological or neuro-logical manifestations of plaintiff's Sturge-Weber Syndrome (Tr. 196, 198, 249-50). At the age of four, plaintiff suffered an episode of acute pneumococcal bacterial meningitis, resulting in a total loss of hearing in her right ear and a 60 percent loss of hearing in her left ear (Tr. 203-04, 207-218, 244-47, 303, 374-76). After this episode, plaintiff suffered post-meningitis syndrome which resulted in substantial behavioral changes includ-ing "severe [attention deficit disorder]," "hyperactivity, inattention, distractibility, impulsivity, and oppositional behavior" (Tr. 303-04, 322). Plaintiff was also diagnosed with precocious puberty[4] in August 1994 (Tr. 322, 353). In order to address these issues, plaintiff received treatment from Dr. Peter Feber, a psychiatrist, on a weekly basis from approximately 1990 through 2004 (Tr. 114, 450).

Plaintiff's circulatory problems have gotten steadily worse as she has gotten older and she has been diagnosed with a

---

[4]Precocious puberty refers to the appearance of physical and hormonal signs of pubertal development at an earlier age than is considered normal.

cardiac arrhythmia which has impacted her peripheral circulation causing pain and swelling (Tr. 307, 462). Plaintiff also suffers from anxiety attacks and in October 2005, plaintiff was admitted to the emergency room at Dunkirk Hospital due to a severe anxiety attack. Plaintiff's other afflictions include mononucleosis, compromised liver functions and glaucoma, although her eyesight is adequate when she wears glasses (Tr. 259, 315, 445).

In spite of these obstacles, plaintiff completed high school with the aid of special services for the hearing impaired, testing modifications, and counseling for her social and emotional disorders (Tr. 103-110, 436-37). As of August 2005, Sara had also completed one year of college at the State University of New York at Fredonia with special accommodations including note takers, one-on-one tutoring, and extended testing time (Tr. 437).

On April 13, 2004, plaintiff filed an application for supplementary security income alleging a disability beginning at birth (Tr. 94-97). Plaintiff's application was denied by the Social Security Administration on August 3, 2004, and plaintiff filed a request for a hearing in front of an Administrative Law Judge ("ALJ"). Plaintiff's request was granted and a hearing was held in front of Administrative Law Judge Katherine Edgell on August 2-3, 2005. Plaintiff submitted reports from her treating physician Dr. Bernstein and from her cardiologist, Dr. Novick. Plaintiff also underwent the following consultative examinations:

4

(1) a physical examination undertaken by Dr. William Lathan (Tr. 258-261), (2) a hearing exam administered by Dr. John Huang (Tr. 272) and (3) an intelligence and psychiatric examination by Dr. Joyce R. Schreiber (Tr. 262-266). After hearing testimony from plaintiff and a vocational expert, the ALJ made the following findings of fact and conclusions of law and denied plaintiff's application.

> (1) The claimant has not engaged in work at the level of substantial gainful activity since February 7, 1986, the alleged onset date.
>
> (2) The claimant has the following severe impairments: sensoneural hearing loss, 100% loss in the right ear and 40-60% loss in the left ear, congenital vascular deformities including Sturge-Weber syndrome and Klippel Traunauny Weber syndrome; scoliosis; attention deficit hyperactivity disorder and depression.
>
> (3) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . .
>
> (4) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a very restricted range of sedentary work. She is able to stand or walk for a total of two hours but must have a sit/stand option. She must be able to periodically elevate her leg and is precluded from postural activities and can only occasionally handle, finger and feel. She is unable to work in an environment with background noise or temperature extremes. She is precluded from high stress jobs.
>
> \*       \*       \*
>
> (9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

5

> (10) The claimant has not been under a "disability" as
> defined in the Social Security Act, since March 1,
> 2004, the date the application was filed.

Tr. 17-20.  On September 13, 2006, plaintiff's appeal of the
ALJ's decision was denied.  Plaintiff filed this action for
judicial review of the ALJ's decision on August 27, 2007 (Docket
Item 2).

III.  Analysis

On April 1, 2008, the Commissioner moved for a remand.
The Commissioner argued that the ALJ did not obtain a report from
plaintiff's treating psychiatrist, Dr. Ferber, and thereby failed
to develop the record, necessitating a remand (Def. Mem. at 13-
14).  There is no mention of any report from Dr. Ferber in the
ALJ's decision, and the Commissioner submits the following
colloquy between the ALJ and plaintiff as evidence that the ALJ
failed to obtain a report from Dr. Ferber:

> ALJ:   All right.  As I said, I'm going to try to
>        get a report from your treating psychologist.
>        Actually if you just want to leave the name
>        and address and phone number for us.  Is that
>        Farber or –
>
> CLMT:  Yeah send it to him because he's been seeing
>        me since I was like eight or nine.
>
> ALJ:   Okay.
>
> CLMT:  He's followed me.
>
> ALJ:   And he's a psychologist?
>
> Rep:   Psychiatrist, your honor.

6

> ALJ:      Psychiatrist, okay.  All right.  We're going
>           to try to update the records and send you a
>           written decision in the mail.  All Right.
>           And you're all done for today.
>
> CLMT:     Thank you.
>
> ALJ:      So you don't need to wait and physically take
>           it.  I'll just send it to the psychiatrist
>           and –
>
> CLMT:     Okay.
>
> ALJ:      -- see if we can get something a little more
>           specific.
>
> CLMT:     Well, I have an appointment with him on Tues-
>           day so --
>
> ALJ:      Ferber.
>
> CLMT:     Yes.
>
> ALJ:      Oh, all right.  Then –

Tr. 482-483.  The transcript ends in mid-sentence without a clear

decision as to who would be responsible for obtaining the report

from Dr. Ferber.  According to the Commissioner, the ALJ did not

make "any further attempt to contact Dr. Ferber" (Def. Mem. at

13).  The Commissioner argues that the ALJ's failure to assist a

pro se plaintiff by obtaining Dr. Ferber's report requires that I

remand this case for further development of the record (Def. Mem.

at 13, citing Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990)).

Plaintiff has not opposed the Commissioner's motion for

a remand.  Indeed, plaintiff's complaint requests that I modify

the ALJ's decision or "in the alternative, remand . . . for

reconsideration of the evidence" (Complaint at ¶ 9(c)).  Accord-

7

ingly, I recommend that the Commissioner's motion for a remand be granted.

IV.   Conclusion

Accordingly, for the aforementioned reasons, I recommend that the Commissioner's motion be granted and the matter be remanded to the ALJ for further proceedings.

V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of this Report and Recommendation to file written objections.   See also Fed.R.Civ.P. 6(a) and 6(d). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States District Judge, 500 Pearl Street, Room 630, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.   Any requests for an extension of time for filing objections must be directed to Judge Daniels.   FAILURE TO OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.   Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d

8

1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300

(2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d

Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir.

1983).

Dated:   New York, New York
         March 31, 2009

                                    Respectfully submitted,


                                    HENRY PITMAN
                                    United States Magistrate Judge


Copies mailed to:

Ms. Sarah Woodhouse
50 Third Avenue
Nyack, New York, 10960

Leslie A. Ramirez-Fisher, Esq.
Assistant United States Attorney
86 Chambers Street, 3rd Floor.
New York, New York, 10007